Maoomber, J.
The deceased was a woman upwards of eighty years of age, who lived in humble quarters, and, without the knowledge of any person, apparently, of the extent of her property, dies leaving the sum of $4,000, mostly in bank, but some of it hidden away with her bank books in the mattress of her bed.
She was shown to have left no descendants, and no collateral relatives nearer than nephews and nieces, who are the contestants. She lived in small rooms in the rear of the house of John Severs, the proponent of the will and who is the principal legatee thereunder. She had no friends or companions except one elderly lady by the name of Ellen Mcdale. The surrogate has found as a matter of fact that the testatrix had repeatedly before the execution of the will in question, expressed the intention of leaving nothing to her relatives, stating as a reason therefor, in substance, *183 that they did not care for her personally, and only for her money or property. This finding has been made notwithstanding the evidence of Harriet Ground and of Margaret Schultz and others who have given testimony, in substance, that she often spoke of her nephews and nieces, but seemed to be more attached to one nephew than to the others.
Somewhere from six to ten hours before she died the will in question was executed by her. The evidence of Mrs. Bertha Severs, the wife of John Severs, corroborated in many respects by others, shows that the testatrix, believing that she was near her end, asked John Severs to see to it that she had a decent burial, and was not buried in the Potters field. He promised to see that she was not buried in Potters field but should have a Christian burial. She said to him that she wanted to make her will and to give him all that she had if he would see that she had a proper burial, except the sum of $200, which she desired to give to Ellen McGale. Thereupon Mr. Severs sent for Adam Hins, a notary public, with whom he had no previous acquaintance, who came, and, as Mr. Hins testifies, took the old lady’s, instructions. Mrs. Severs testifies that Mrs. Hins asked the testatrix if she had any children, and she said she had not, and he then asked her how she would have her property distributed, and she said she wanted to give $200 to Ellen McGale and the rest to John Severs. He thereupon, with a blank form, prepared this will.
John Schuier, the other witness to the will, is a brother-in-law of the proponent, and had known the deceased fourteen or fifteen years, who was at times his customer, buying groceries of him. He testified that she said to him that she wanted him as a witness to the will, and that she said it was her last will and testament, and she wanted him to sign it as a witness. He says her mind was very clear, and he noticed nothing different in her than what was customary. The old lady, though capable of writing, executed the instrument with a cross. This is explained by the witness Hins, corroborated by others, that at the time of its execution she was seized with a severe.coughing fit, and that he explained that it would do just as well for her to take hold of the pen and he would make the mark m her behalf, which was accordingly done. This witness, who is not shown to have any relations with the parties interested in the case, and had never seen the testatrix before that time, testifies, in substance, that she appeared to him to be of clear mind touching her property and of its disposition, and requested him to be a witness to the will.
The testimony of Harriet Ground, if true, would make a ¡strong case against the proponent. This evidence running *184 through fifty-six pages of printed matter, has been carefully weighed by us, and we are of the' opinion that the learned surrogate, acted wisely in not resting his judgment, upon it, nor to any considerable extent upon that of Margaret Schultz.
If we understand the decision of the surrogate (5 N. Y. State Rep., 329), aright, he has vacated the probate of the will, not because it was not regularly and formally executed according to the provisions of the statute, not because of any undue influence exercised upon her mind by Severs, or by any person attending her under the established meaning of that term nor for duress, nor because of mental incapacity of the decedent to make a last will and testament. He has placed his decision, as disclosed by his opinion, upon the ground that the proponent did not sufficiently inquire of her concerning the extent and situation of her property, and of her relation to her next of kin, before he consented to be a beneficiary in the will, or consented to aid her in the execution of her purposes. Lest injustice be done to the reasoning of the learned surrogate on our part concerning this matter, it is well to quote somewhat fully from his elaborate opinion.
He says: “'These accounts of what took place just before the will was written, are of grave importance, not simply as showing what was said, but as showing also, what, was not said, between the notary and the decedent at the only time when the latter is claimed to have any instructions for the preparation of her will. She seems to have been asked whether she had a husband and whether she had, children. She was not questioned as to the _ existence of any other relatives and for aught that she said, or that was known to the notary and to the proponent, she might have had a dozen brothers and sisters with nephews, nieces and cousins by the score. She was asked if Mr. Severs was to be credited respecting the nature of her property, but no inquiry or disclosure was made in regard to its value. These omissions were serious. The proponent should not, in view of the circumstances disclosed by the evidence, have allowed the decedent to make a will under which he would be substantially the sole beneficiary until her attention had been expressly called to the nature, extent and value of her property, and to the question whether or not any person existed who would naturally be the object of her bounty.
* * .* “I am greatly inclined to think that when the decedent announced her purpose of leaving him all her property, except $200, and subsequently gave directions for the preparation of a will which should effectuate that purpose, she did so chiefly, if not altogether, for the sake of secur *185 ing for her dead body a decent burial. She seems to have been under a morbid apprehension that her remains might be deposited in a Potter’s field. This appears in what she said on three several occasions to Henry Schuier and Mrs. Severs, two of the proponent’s witnesses, and Henry Wood-gate, who was called by the petitioner.
‘ ‘ Says Schuier, she said my landlord is the nearest friend I have got, and he is the man who will bury me; otherwise she would be buried in Potter’s field.
“Woodgate testifies that not long before her death the decedent intimated a wish that he (Woodgate) should bury her and proposed to give him her money.
“ The contribution which Mrs. Severs makes to this theory has been stated already. She reports the decedent as saying to Severs, ‘ I am going to make a will now to you; I will make my wifi and I will be sure you must bury me;, you must do it; you must promise me.’
“In this situation I am clear that Severs was called upon to make inquiry into the value of the dying woman’s estate and to ask her relations with her kinsfolk before he busied himself in finding a notary or consented to the execution of a will in his interest. In view of the facts and circumstances upon which I have commented, I have serious doubts, both as regards the capacity of this deceased, and as regards her freedom from such influence as the law pronounces undue.”
How the conclusion of undue influence exerted upon this old lady by those surrounding her can be drawn from the trustworthy evidence in the case is not readily discern-able, nor do we understand the surrogate to assent that, there was any exertion of undue influence by Severs, or by anybody in his behalf, to have this will executed in his favor, except as he has himself stated it, in connection with and mainly dependent upon the omission which he regards as serious, of the proponent to make the inquiries above mentioned.
In the case of Cudney v. Cudney (68 N Y , 152), the court says: “To invalidate a will on the ground of undue influence there must be affirmative evidence of the facts from which such influence is to be inferred. It is not sufficient to show that a party benefited by a will had the motive and opportunity to exert such influence; there must be evidence that he did exert it and so controlled the actions of the testator, either by importunities which he could not resist, or by deception, fraud or other improper means, that the instrument is not really the wifi of the testator.”
It is not unnatural that Mr. Severs should have been surprised, as the surrogate says he was subsequently, over the. *186 sum which came to him from the old lady by virtue of this will; but as it seems to us, this cannot be said to arise from any bad motive or any omission of duty on his part in aiding her in the execution of the will and in consenting to become her beneficiary and assuming on his part a charitable burden. And there is nothing in the case to show that Severs at this time believed, or had any reason to believe, that the arrangement that the old lady desired to make was a benefit or a detriment to him.
Nothing is shown to bring knowledge at the time to him of the actual condition of her property. Shé had been his tenant for years. There is nothing in his conduct during that period or since which shows an over-reaching or grasping disposition by means of which he would undertake, knowingly, to possess himself of her property without her full and free consent.
Suppose he had enquired into the extent of the old lady’s property and had found out by her that she had many nephews and nieces, how would that have availed the case, inasmuch as the surrogate has found as a matter of fact, that for a long time prior to the execution of the will she had expressed her determination not to give any of her property to these next of kin, because, as she believed, they had not been next of kin to her except in name and for the purposes of distribution of her estate.
We think within the language of section 2652 of the Code of civil procedure, there were not sufficient facts before the surrogate to enable him to decide that this will was not sufficiently proved to be the last will of the testatrix or for any reason it was invalid; and instead of making a decree revoking the probate thereof, the judgment should have been a confirmation of its probate.
It follows therefore, that the decree should be reversed, and that under section 2588 of the Code of Civil Procedure it should be ordered, that the material questions of fact arising upon the issues between the parties shall be tried before a-jury in the court of common pleas.
The order stating the questions of fact so to be tried, if not agreed upon by the parties, may be settled on submission of the papers to the justice writing this opinion.
The subject matter of costs, and how payable is reserved until after such trial.
Van Brunt, P. J., and Bartlett, J., concur.